UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
YONG BIAO JI, on behalf of himself and others         :
similarly situated,                                    :
                          Plaintiff,                   :
v.                                                     :        **OPINION AND ORDER**
                                                       :
                                                       :        22 CV 8196 (VB)
NEW AILY FOOT RELAX STATION INC. and                  :
EILEEN FOOT RELAX STATION INC.,                        :
                          Defendants.                  :
--------------------------------------------------------------x

<u>Briccetti, J.</u>:

Plaintiff Yong Biao Ji brings wage-and-hour claims and a state law fraudulent transfer

claim against defendants New Aily Foot Relax Station Inc. ("New Aily") and Eileen Foot Relax

Station Inc. ("Eileen," and together with New Aily, the "Successor Companies").  Plaintiff

alleges the Successor Companies were transferred all the assets of non-party Aily Foot Relax

Station Inc. ("Old Aily") for the purpose of rendering Old Aily, a defendant in another wage-

and-hour lawsuit brought by Ji, judgment-proof.

Now pending is the Successor Companies' motion to dismiss the complaint pursuant to

Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. #11).[1]

For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN

PART.

---

[1] Although defendants' submission is entitled "Defendants' Special Appearance," and refers only to Rules 12(b)(2) and 12(b)(7), based on the content of the submission, the Court fairly construes it as a motion to dismiss under Rules 12(b)(1) and 12(b)(6).  (<u>See</u> Doc. #12).

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint, and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.     Prior Litigation

On December 29, 2019, Ji commenced a lawsuit in this District pursuing wage-and-hour claims arising from his employment by the defendants in that suit:  Old Aily, Linda Foot Relax Spa Station Inc. ("Linda"), and two individual owners, Xiang Man Zhang and Ke Xue Zheng (the "Individual Owners," and together with Old Aily and Linda, the "Prior Litigation Defendants").  See Ji v. Aily Foot Relax Station Inc., No. 19-cv-11881 (S.D.N.Y. filed Dec. 29, 2019) (the "Prior Litigation").

II.    Alleged Wage and Hour Violations

On September 25, 2022, Ji commenced the instant lawsuit, asserting wage-and-hour claims and a state law fraudulent transfer claim against the Successor Companies.  (Doc. #1 ("Compl.")).  In this action, Ji alleges he was employed by the Prior Litigation Defendants, who are not parties to this action, from November 1, 2016, to May 31, 2017, and again from September 2, 2018, to October 23, 2019, to work at their "Foot Relax Spa" businesses located in Yonkers, New York, and Parsippany, New Jersey.  (Compl. ¶ 7).

Ji alleges he worked between 70.50 hours and 84.50 hours over the course of six days per week while employed by the Prior Litigation Defendants, but was paid less than the minimum wage and did not receive the overtime wages to which he was entitled under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  Ji also contends the Prior

2

Litigation Defendants failed to pay him spread-of-hours compensation or give him wage statements, both in violation of the NYLL.

Instead, Ji was allegedly paid a "piece rate" for each massage performed, regardless of the number of hours he worked.  (Compl. ¶ 62).  According to Ji, the Prior Litigation Defendants deliberately failed to keep full and accurate records of employees' hours and wages "to mitigate liability for their wage violations."  (Id. ¶ 51).

Further, Ji alleges Individual Owner Xiang Man Zhang drove Ji to and from work in a company van.  Ji claims the Individual Owners did not permit him to leave the Foot Relax Spa or its immediate vicinity during working hours.

III.   The Successor Companies

According to the complaint, New Aily was formed on January 7, 2020, and Eileen was formed on March 3, 2020.

In January 2020, after Ji commenced the Prior Litigation, Old Aily allegedly transferred all of its assets to New Aily, including its equipment, lease of the premises of the Foot Relax Spa in Yonkers, telephone number, and goodwill, "for no consideration, and fraudulently, for the purpose of rendering [Old Aily] judgment-proof in" the Prior Litigation.  (Compl. ¶ 31).  Ji alleges Old Aily was not dissolved after the transfer, but that it no longer does business.

Thereafter, in April 2020, New Aily allegedly transferred all its assets to Eileen for no consideration and for the same fraudulent purposes.  Ji alleges New Aily, like Old Aily, was not dissolved after transferring its assets but no longer does business.

Ji alleges the Individual Owners own, in whole or in part, Old Aily, New Aily, and Eileen.  After the asset transfers, the Individual Owners allegedly continued to operate the Foot Relax Spa and to offer substantially the same services to the same clientele, with "substantially

all" the same employees.  (Compl. ¶ 33).  And Individual Owner Xiang Man Zhang, who served

as a manager of the Foot Relax Spa when Ji was employed there, allegedly continued serving as

manager after ownership was transferred to the Successor Companies.

Based on these facts, Ji claims the Successor Companies are liable in respect of his wage-

and-hour claims as successors to Old Aily.  (Compl. ¶¶ 36, 44).  He also claims the asset

transfers from Old Aily to New Aily, and from New Aily to Eileen, were fraudulent transfers

intended to render Old Aily insolvent against a judgment in the Prior Litigation.

## DISCUSSION

I.    Standard of Review

A.    Rule 12(b)(1)

A district court must dismiss an action pursuant to Rule 12(b)(1) "for lack of subject

matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it."  Conn.

Parents Union v. Russell-Tucker, 8 F.4th 167, 172 (2d Cir. 2021).[2]

When deciding a Rule 12(b)(1) motion at the pleading stage, the court "must accept as

true all material facts alleged in the complaint and draw all reasonable inferences in the

plaintiff's favor," except for "argumentative inferences favorable to the party asserting

jurisdiction."  Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary

order).  To the extent a Rule 12(b)(1) motion places jurisdictional facts in dispute, the district

court may resolve the disputed jurisdictional fact issues by referring to evidence outside the

pleadings.  Amidax Trading Grp. V. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).

In addition, when a defendant moves to dismiss for lack of subject matter jurisdiction and

---

[2]      Unless otherwise indicated, case quotations omit all internal citations, quotations,
footnotes, and alterations.

on other grounds, the court should consider the Rule 12(b)(1) challenge first.  <u>Rhulen Agency,</u>

<u>Inc. v. Alabama Ins. Guar. Ass'n</u>, 896 F.2d 674, 678 (2d Cir. 1990).

       B.    <u>Rule 12(b)(6)</u>

      In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative

complaint under "the two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v.</u>

<u>Iqbal</u>, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id.</u> at 678;

<u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

      To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard

of "plausibility."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  <u>Id.</u> (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556).

II.    <u>Subject Matter Jurisdiction</u>

      Defendants argue the Court lacks federal-question jurisdiction over this action because

(i) Ji has failed to allege "enterprise coverage" under the FLSA and (ii) defendants were not Ji's

employer for FLSA purposes.

In addition, although not raised by defendants, the Court must determine whether it has jurisdiction over plaintiff's state law claims because the parties do not have diverse citizenship.[3]

A.   <u>Enterprise Coverage</u>

Defendants argue Ji fails to allege that either defendant earned more than $500,000 in annual revenue, as required to prevail on an FLSA claim, and therefore the Court lacks federal-question jurisdiction.

Defendants are incorrect.

Here, Ji does allege each defendant "is and was a business with a gross annual revenue in excess of $500,000.00 per year."  (Compl. ¶¶ 10, 13); <u>see also</u> 29 U.S.C. § 203(s)(1)(A)(ii). More importantly, however, the "[t]he FLSA's enterprise coverage requirement of $500,000 in gross annual sales is not jurisdictional," and instead "goes to the merits of the FLSA claims." <u>Angel v. Harvest C-Food Inc.</u>, 2015 WL 7288644, at *1 (S.D.N.Y. Nov. 16, 2015); <u>see also, e.g.</u>, <u>Jia Hu Qian v. Siew Foong Hui</u>, 2012 WL 1948820, at *2 (S.D.N.Y. May 30, 2012) ("A plaintiff's obligation to demonstrate that an employer is an enterprise engaged in commerce is simply an element of the cause of action and a failure to make this showing constitutes a failure on the <u>merits</u>.").

Accordingly, defendants' arguments regarding enterprise coverage are not a proper jurisdictional challenge, and this case will not be dismissed on that ground.[4]

---

[3]    Federal courts "have an independent obligation to consider the presence or absence of subject matter jurisdiction <u>sua</u> <u>sponte</u>."  <u>See</u> <u>Joseph v. Leavitt</u>, 465 F.3d 87, 89 (2d Cir. 2006).

[4]    To the extent defendants move to dismiss for failure to state a claim under Rule 12(b)(6), based on Ji's purported failure to allege enterprise coverage, that motion likewise fails—as the Court noted, Ji explicitly alleges each defendant has annual gross sales in excess of $500,000. (<u>See</u> Compl. ¶¶ 10, 13).

B.       FLSA Successor Liability

Defendants argue there is no federal question presented by Ji's complaint because

defendants were formed after Ji ceased employment with the Prior Litigation Defendants, and

thus, defendants are not his "employers" for FLSA purposes.

The Court disagrees, because Ji has alleged facts sufficient to plead defendants are liable

as successors to his former employer, Old Aily.

1.       Legal Standard

"Under the general common law rule [in New York], a corporation that merely purchases

for cash the assets of another corporation does not assume the seller corporation's liabilities."

N.Y. State Teamsters Conf. Pension & Ret. Fund v. C&S Wholesale Grocers, Inc., 24 F.4th 163,

176 (2d Cir. 2022).  However, federal courts have "imposed liability upon successors beyond the

bounds of the common law rule in a number of different employment-related contexts in order to

vindicate important federal statutory policies," including FLSA claims.  Id.

Accordingly, there is a "federal common law standard for successor liability that has

slowly gained traction in the field of labor and employment disputes over the course of almost

fifty years."  Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 150 (3d Cir. 2014).  "That

standard, which presents a lower bar to relief than most state jurisprudence, was designed to

impose liability upon successors beyond the confines of the common law rule when necessary to

protect important employment-related policies."  Id. at 150–51.

The Second Circuit has not "decided whether the substantial continuity test," meaning,

the federal common law test, "or the traditional test applies to [determine successor liability for]

FLSA claims."  Ji Li v. New Ichiro Sushi Inc., 2021 WL 6105491, at *2 (2d Cir. 2021)

(summary order).  Accordingly, "many courts have analyzed successor liability under both

standards without deciding which standard applies to FLSA claims." <u>Rotthoff v. N.Y. State Catholic Health Plan, Inc.</u>, 2020 WL 5763862, at *7 (E.D.N.Y. Sept. 28, 2020).

a.      <u>Substantial Continuity Test (Federal Common Law)</u>

Under the substantial continuity test, to impose successor liability, "(1) a successor must have notice of its predecessor's liability, and (2) there must be substantial continuity of identity in the business enterprise." <u>N.Y. State Teamsters Conf. Pension & Ret. Fund v. C&S Wholesale Grocers, Inc.</u>, 24 F.4th at 177.

"Courts applying the substantial continuity test in the FLSA context have utilized a variety of factors to assist in the analysis." <u>Ji Li v. New Ichiro Sushi Inc.</u>, 2021 WL 6105491, at *2 (2d Cir. Dec. 21, 2021) (summary order).  However, in this Circuit, district courts have "focus[ed] on whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations," including consideration of:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

<u>Bautista v. Beyond Thai Kitchen, Inc.</u>, 2015 WL 5459737, at *5 (S.D.N.Y. Sept. 17, 2015).  "Of the test's nine factors, courts have considered the first two factors—notice and the ability of the predecessor to provide relief—to be indispensable." <u>Rotthoff v. N.Y. State Catholic Health Plan, Inc.</u>, 2020 WL 5763862, at *7 (E.D.N.Y. Sept. 28, 2020).

8

b.      Traditional Test (New York Common Law)

"Under both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." New York v. Nat. Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006). Therefore, "a business buyer is liable for the seller's debts only when (1) a buyer formally assumes a seller's debts; (2) the transactions are undertaken to defraud creditors; (3) a buyer de facto merged with a seller; or (4) a buyer is a mere continuation of a seller." Diaz v. Slayton One Cleaner Inc., 2018 WL 4935831, at *3 (S.D.N.Y. Oct. 11, 2018) (quoting Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003)).

The third exception—when a buyer is a "mere continuation of a seller"—is at issue here. (See Compl. ¶¶ 36, 44 (alleging New Aily is "a mere continuation of [Old Aily], and is substantially in continuity with [Old Aily]," and Eileen is "a mere continuation of [New Aily], and is substantially in continuity with [New Aily]")). To determine whether a successor is a "mere continuation" of the prior entity, courts consider:

> whether there was (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired company as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation.

Xue Ming Wang v. Abumi Sushi Inc., 262 F. Supp. 3d 81, 87 (S.D.N.Y. 2017) (quoting New York v. Nat. Serv. Indus. Inc., 460 F.3d at 209). The first factor, continuity of ownership, is necessary to hold a successor liable under the "mere continuation" exception. Id.

2.      Analysis

The Court need not decide which test for successor liability applies, because Ji has stated a claim for successor liability under both.

Here, Ji alleges defendant New Aily was formed on January 7, 2020, less than two weeks after Ji filed the Prior Litigation against Old Aily.  Ji contends Old Aily and New Aily were owned at least in part by the Individual Owners, and that Old Aily transferred all its assets to New Aily for no consideration "for the purpose of rendering [Old Aily] judgment proof in" the Prior Litigation.  (Compl. ¶ 31).

Likewise, Ji alleges Eileen was formed on March 3, 2020, and that all of New Aily's assets were transferred to Eileen in April 2020 for no consideration "for the purpose of . . . further insulating defendants in the Prior Litigation from having to pay a judgment." (Compl. ¶ 39).  Ji further alleges Eileen, like New Aily and Old Aily, was owned at least in part by the Individual Owners.

Accordingly, Ji has plausibly alleged the Successor Companies had notice of the Prior Litigation, and that Old Aily and New Aily were rendered less able to provide relief in the Prior Litigation through these transactions, satisfying the first and second factors of the substantial continuity test.

Moreover, Ji plausibly alleges the business operations of the Foot Relax Spa continued, substantially unchanged, after each asset transfer.  Ji alleges the same employees continued to work at the Foot Relax Spa, and to provide substantially the same services to the same clientele, in the same leased premises.  In addition, Individual Owner Xiang Man Zhang allegedly continued to serve as manager.  Accepted as true, these allegations indicate the Successor Companies continued Old Aily's business operations with "the same or substantially the same" work force and supervisory personnel, as well as the same jobs, equipment, location, and product.  Bautista v. Beyond Thai Kitchen, Inc., 2015 WL 5459737, at *5.

Accordingly, at this early stage, Ji's allegations satisfy the substantial continuity test.

In addition, drawing all reasonable inferences in Ji's favor, Ji's allegations satisfy the New York common law test for successor liability.

Ji alleges the Individual Owners owned Old Aily, New Aily, and Eileen, and therefore he has alleged continuity of ownership.  Cf. Xue Ming Wang v. Abumi Sushi Inc., 262 F. Supp. 3d at 87–88 (declining to find continuity of ownership when "there is no dispute that ownership of the business changed hands").  Ji also alleges Old Aily and New Aily no longer continue to do business.  Further, Ji has alleged, as discussed above, "continuity of management, personnel, physical location, and general business operation."  Id. at 87.  And in light of Ji's allegations indicating the operations of the Foot Relax Spa were not impacted by the transfers, it is reasonable to infer the Successor Companies assumed "liabilities ordinarily necessary for the uninterrupted continuation of the business."  Id.  Therefore, Ji has plausibly alleged defendants are subject to successor liability on his FLSA claims under the common law test.[5]

In short, under either test, Ji pleads a federal cause of action against defendants, over which the Court has jurisdiction.

C.     State Law Claims

Although not raised by defendants, the Court must determine whether it has subject matter jurisdiction over Ji's state law claims because the parties do not have diverse citizenship.

The Court concludes it has supplemental jurisdiction over Ji's state law claims.

1.     Supplemental Jurisdiction

A federal court may exercise supplemental jurisdiction over state law claims if they "form part of the same case or controversy" as the plaintiff's federal claims, 28 U.S.C. § 1367(a),

---

[5]     Because Ji has sufficiently pleaded successor liability under the federal and the New York common law tests, to the extent defendants challenge Ji's FLSA and NYLL claims pursuant to Rule 12(b)(6) for failing to allege successor liability, the challenge is without merit.

meaning the state and federal claims arose "out of approximately the same set of events."

Treglia v. Town of Manlius, 313 F.3d 713, 723 (2d Cir. 2002).

### a.   Wage-and-Hour Claims

Ji's wage-and-hour claims under the FLSA and NYLL "derive from a common nucleus of operative facts since they arise out of the same compensation policies and practices of" his former employers.  Shahriar v. Smith Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011).  Accordingly, the Court has supplemental jurisdiction over Ji's NYLL claims.

### b.   Fraudulent Transfer Claim

Ji asserts a fraudulent transfer claim under Section 273 of New York Debtor and Creditor Law ("the Fraudulent Transfer Claim"), with respect to the asset transfers from Old Aily to New Aily, and from New Aily to Eileen.  See N.Y. Debt. & Cred. § 273.

The facts giving rise to the Fraudulent Transfer Claim concern a series of transactions that occurred after Ji ceased employment.  However, because Ji's FLSA claims against the Successor Companies depend on the imposition of successor liability, his FLSA claims and the Fraudulent Transfer Claim arise from largely the same events—i.e., that Old Aily, Ji's former employer that allegedly failed to pay him adequate wages, transferred all its assets to New Aily, and then to Eileen, for no consideration, to render Old Aily insolvent against a judgment to Ji in the Prior Litigation.  Accordingly, in this particular case, the Fraudulent Transfer Claim and the FLSA claims "form part of the same case or controversy," making the exercise of supplemental jurisdiction appropriate.  28 U.S.C. § 1367(a).[6]

---

[6]      The Court may also exercise ancillary jurisdiction over the Fraudulent Transfer Claim, because it seeks to "to reach [Old Aily]'s assets to satisfy a judgment against [it]" in the Prior Litigation, Kim v. Yoo, 2016 WL 258642, at *4 (S.D.N.Y. Jan. 20, 2016), and "do[es] not present a substantive theory seeking to establish liability on the part of a new party not otherwise liable."  Epperson v. Ent. Express, Inc., 242 F.3d 100, 104, 107 (2d Cir. 2001) (A claim "to set

III.   <u>Failure to State a Claim</u>

Defendants argue Ji's FLSA claims are time-barred.

The Court disagrees in part:  because Ji has plausibly pleaded willful FLSA violations, only claims accruing more than three years before he filed suit are time-barred.

A.   <u>Legal Standard</u>

"The limitations period for FLSA claims is two years, except that a cause of action arising out of a willful violation may be commenced within three years."  <u>Whiteside v. Hover-Davis, Inc.</u>, 995 F.3d 315, 319 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)).  "[A]n employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." <u>Id</u>. at 324.  "Mere negligence is insufficient," so "if an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful."  <u>Id</u>.

"[W]illfulness operates as an independent element of claims for <u>willful</u> violation of the FLSA—a subset of FLSA claims pursuant to which an employer is subject to heightened liability."  <u>Whiteside v. Hover-Davis, Inc.</u>, 995 F.3d at 322.  Accordingly, "a plaintiff must allege facts at the pleadings stage that give rise to a plausible inference that a defendant willfully violated the FLSA for the three-year exception to apply."  <u>Id</u>. at 320.

"The cause of action for FLSA . . . claims accrues on the next regular payday following the work period when services are rendered."  <u>Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.</u>, 723 F.3d 192, 198 (2d Cir. 2013).

---

aside a fraudulent conveyance (and not to establish liability) [is] within the ancillary jurisdiction of the District Court.").

B.      <u>Analysis</u>

Ji commenced this action two years and eleven months after ending his employment with the Prior Litigation Defendants.  Therefore, Ji's FLSA claims are time-barred unless his factual allegations give rise to a plausible inference that his employers willfully violated the FLSA.

Here, Ji alleges the Prior Litigation Defendants drove him to and from work in a company van.  He also alleges he was not permitted to leave his place of employment or its immediate vicinity during the working day.  In light of these facts, it is reasonable to infer the Prior Litigation Defendants were aware of Ji's hours, which Ji claims generally exceeded twelve hours per day, six days per week.

In addition, Ji alleges he was paid on a "piece rate" based on the number of massages performed, which fell short of the federally prescribed minimum wage based on the number of hours he worked.  (Compl. ¶ 62).  Ji also alleges he was not provided with wage statements, either at the time of hire or at any subsequent time, reflecting his rate of pay.  Finally, Ji contends defendants failed to keep full and accurate records of Ji's hours and wages to mitigate liability for their wage violations.  Together, these facts give rise to a plausible inference that Ji's employers "acted in [a] manner suggesting an awareness that their actions violated or could violate" federal wage-and-hour laws, <u>Whiteside v Hover-Davis, Inc.</u> 995 F.3d at 324, particularly given the substantial control they exercised over Ji's conduct during working hours and their policy of paying per massage—without consideration of hours worked or the maintenance of accurate records.  <u>See</u> <u>Maria v. El Mambi Rest Corp.</u>, 2021 WL 2337577, at *4 (S.D.N.Y. June 8, 2021) (plaintiff who alleged the defendants maintained "a corporate policy of minimizing labor costs" and "disregarded and purposefully evaded recordkeeping requirements . . . by failing

to maintain accurate and complete timesheets and payroll records" stated claim for willful FLSA

violations).

However, not all of Ji's FLSA claims accrued within the expanded three-year limitations

period.  "Because each paycheck represents a potential cause of action," only claims in respect of

paydays occurring during the three-year period before Ji filed suit may proceed.  Nakahata v.

N.Y.-Presbyterian Healthcare Sys., Inc., 723 F.3d at 199.

Accordingly, Ji's FLSA claims arising during the three-year period prior to when he filed

suit (i.e., claims accruing on and after September 25, 2019) may proceed.

### CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

The FLSA claims accruing prior to September 25, 2019, are dismissed.

All other claims shall proceed.

By June 9, 2023, defendants shall file an answer to the complaint.

By no later than May 26, 2023, plaintiff is directed to serve a copy of this Opinion and

Order on defense counsel Ning Ye, Esq., and to file proof of service on ECF.

Dated: May 19, 2023
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge